1 | Omer Salik (SBN 223056)
2 | Carter Arnett PLLC
    | 111 Pier Ave., Suite 101
3 | Hermosa Beach, California 90254
    | Tel: (214) 550-8188
4 | Fax: (214) 550-8185
    | osalik@carterarnett.com
5 |
6 | Attorneys for Plaintiffs
    | Gerardo Prieto and Athena Lonich
7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

| | |
|---|---|
| GERARDO PRIETO, an individual, and ATHENA LONICH, an individual, on behalf of themselves and all others similarly situated | Case No.: 2:25-cv-352-RGK-MAA |
| | **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| Plaintiffs, | |
| vs. | **(1) VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§1700 *et seq.*** |
| SLEEP NUMBER CORPORATION, | |
| Defendant. | **(2) VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 *et seq.*** |
| | **(3) VIOLATION OF CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*** |
| | **(4) FRAUD** |
| | **DEMAND FOR JURY TRIAL** |

1

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Gerardo Prieto and Plaintiff
Athena Lonich (collectively, "Plaintiffs"), on behalf of themselves and all others
similarly situated, hereby allege the following at all times relevant to this amended
complaint:

## I. INTRODUCTION

1. This action is brought against Defendant Sleep Number Corporation
("Sleep Number" or "Defendant") for its false and deceptive pricing practices in
connection with its sale of beds in its stores and on its website
https://www.sleepnumber.com/ ("Website"). For many of its beds, Defendant
advertises fake and inflated comparison reference prices to deceive customers into a
false belief that the sale price is a deeply discounted bargain price. For example,
anyone visiting Defendant's store or Website on a given day who buys a Sleep
Number i8 smart bed "on sale" for $2,999 based on a crossed-out reference price of
$3,999 is being misled, because that bed has rarely, if ever, been sold in the recent
past in Defendant's stores, on the Website or through other retailers for $3,999. In
other words, Defendant's advertised "sales" for many of its beds are not really sales
at all. It is a misrepresentation that Defendant repeats. Specifically, prior to October
2024, Defendant used false reference prices in connection with its advertisements of
Defendant's c4, p6, p6, i8, i10 and m7 beds (collectively, "Subject Beds").

2. The reference prices in Defendant's stores and on its Website for the
Subject Beds are fake. They are not original, regular, retail, or former prices. They
are inflated prices posted to lure unsuspecting customers into jumping at a fictitious
"bargain" and intended to mislead customers into believing that the value of the bed
they are buying is higher than reality. That is, Defendant engages in this deceptive
advertising and pricing scheme to give customers the false impression that they are
getting a deal or bargain when in reality they are being swindled by fake sales and
promotions. As a result, customers are deceived into spending money they otherwise
would not have spent, purchasing items they otherwise would not have purchased,

1  and/or spending more money for an item than they otherwise would have absent the

2  deceptive marketing.

3      3.      By this action, Plaintiffs seek to recover restitution and damages on

4  behalf of all persons who have fallen victim to Defendant's sham sales by purchasing

5  products from Defendant from January 2021 to October 2024 ("Relevant Time").

6  **II.    PARTIES**

7      4.      Plaintiff Gerardo Prieto is a citizen of the State of California and

8  resident of the County of Los Angeles.

9      5.      Plaintiff Athena Lonich is a citizen of the State of California and

10  resident of the County of Los Angeles.

11      6.      Plaintiffs are married to each other.

12      7.      On information and belief, Defendant Sleep Number Corporation is a

13  Minnesota corporation with its principal place of business in Minneapolis,

14  Minnesota. Defendant manufactures, markets, advertises and distributes the Subject

15  Beds throughout the United States, including California.

16      8.      On information and belief, Defendant has sixty-eight (68) retail stores in

17  California, including several in this District.

18      9.      On information and belief, Defendant sells the Subject Beds exclusively

19  through its stores and Website and does not sell the Subject Beds through any other

20  retailer.

21  **III.    JURISDICTION AND VENUE**

22      10.     This Court has subject matter jurisdiction over this action pursuant to the

23  Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because the total matter in

24  controversy exceeds $5 Million and there are over 100 members of the proposed

25  class. Further, at least one member of the proposed class is a citizen of California and

26  Defendant is a citizen of New York.

27      11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a

28  substantial part of the events or omissions giving rise to the claim occurred in this

1    judicial district.

2         12.    Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and

3    (c)(3) because Defendant is subject to the Court's personal jurisdiction in this judicial

4    district.

5         13.    Defendant conducts, and at all relevant times, has conducted business in

6    California through its stores in California and through remote sales channels,

7    including making sales at its stores and through its Websites and delivering products

8    into California.

9    **IV.    GENERAL ALLEGATIONS**

10           **a.  Defendant's False and Deceptive Pricing Scheme**

11           14.    Defendant's business model relies, in part, on deceiving customers with

12   fake sales. On a typical day during the Relevant Time, Defendant prominently

13   displayed in its stores and on its Website some form of a sale where the Subject Beds

14   were purportedly marked down by either a percentage or dollar amount. All or nearly

15   all the Subject Beds were represented as being marked down by the specified

16   discount from a substantially higher reference price (hereafter, the "Reference

17   Price"). The supposed markdowns were represented to the customer by prominently

18   displaying a crossed-out Reference Price next to the sale price. Defendant employed

19   these deceptive tactics to convey to customers that the product had previously sold in

20   the recent past at the Reference Price and were being sold to the customer at a

21   substantial discount.

22           15.    However, this Reference Price was almost always, if not always, a

23   falsely inflated price because Defendant rarely, if ever, sold the Subject Beds at the

24   Reference Price. The only purpose of the Reference Price was to mislead customers

25   into believing that the displayed Reference Price was an original, regular, or retail

26   price at which Defendant usually sold the item or previously sold the item in the

27   recent past. As a result, Defendant falsely conveyed to customers that they were

28   receiving a substantial markdown or discount, when in reality the alleged discount

4

was false and fraudulent.

16.    Below are representative examples from the Website using False Reference Prices in 2023, which were also presented to customers in Defendant's stores:



17.    Defendant's Website and stores advertised similar sales for the Subject Beds using Reference Prices throughout the Relevant time. Defendant's stores direct customers to the Website for additional information regarding the beds, pricing and sale promotions, for example, by displaying a QR code that takes people to the Website.

18.    These pricing and advertising practices reflecting high-pressure fake sales are deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendant supposedly on sale and at a substantial and deep discount. The truth is that Defendant rarely, if ever, sold any of the Subject Beds at the Reference Price either through its Website or through its retail stores. The Reference Price is, therefore, an artificially inflated price. In turn, the

1    advertised discounts are thus nothing more than phantom markdowns.

2        19.    The Subject Beds are substantially similar products that Defendant

3    markets in a substantially similar way using false Reference Prices. Each of the

4    Subject Beds are "smart beds" that use sensors and other technology to gather and

5    analyze data about users' sleep patterns. Defendant advertises that each of these beds

6    is designed to help users fall asleep faster and provide more restful sleep. Each of the

7    Subject Beds offer temperature benefits, adjustable firmness and sense movements.

8    Defendant sells and advertises each of the Subject Beds in its stores and on its

9    Website as smart beds. Each of the Subject Beds offers adjustable firmness and

10    advertises "pressure relief." Each of the Subject Beds connects to a mobile

11    application that provides a "SleepIQ score."

12        20.    Defendant advertises each of the Subjects Beds together in its stores and

13    on its Website. Defendant's false advertising of sales for the Subject Beds is

14    substantially the same for each of the Subject Beds. Specifically, Defendant marketed

15    each of the Subject Beds in its stores and on its Website with sale promotions using

16    false Reference Prices and rarely, if ever, offered the beds at the inflated Reference

17    Price.

18                    **b. Plaintiffs' Purchase of Falsely Advertised Item**

19        21.    Plaintiffs fell victim to Defendant's false advertising and deceptive

20    pricing practices. On or about July 29, 2023, Plaintiffs visited a Sleep Number store

21    in Palmdale, California to look for a bed. Prior to that, Plaintiffs visited Defendant's

22    Website. In both the store and on the Website, Plaintiffs saw that Defendant was

23    running a purported sale promotion on Defendant's i8 bed.

24        22.    Below is an image from Defendant's Website from July 29, 2023,

25    captured by http://wayback.archive.org of the sale promotion Defendant was

26

27

28

advertising at the time of Plaintiffs' purchase for i-series beds:



Innovation Series smart beds

Rating: 4.8 /5rating stars(101754) reviews

$2,349.00 - $7,399.00
Reg: $3,549.00 - $7,399.00

23.     Plaintiffs browsed Defendant's store and observed sale offers the same or substantially similar to those shown above on the Website. They purchased an i8 bed, with Defendant showing a Reference Price and a discount, as follows:

| | SKU | Item Description | Shipping Method | Item Price | | |
|---|---|---|---|---|---|---|
| 1 | K2R | King i8 Sleep Number Smart Bed | Home Delivery | $4,699.00 | $939.80 | $3,759.20 |
| 1 | KFIB | King Integrated Base SCS | | $549.00 | $109.80 | $439.20 |
| 1 | DISPOSAL | Disposal Service | Home Delivery | $0.00 | $0.00 | $0.00 |
| 1 | REFEE_CA | Recycle fee for CA | UPS Ground | $10.50 | $0.00 | $31.50 |
| 1 | HOMEDELIVERY | HOMEDELIVERY | Home Delivery | $249.00 | $0.00 | $249.00 |
| | | | | Subtotal | | $4,478.90 |
| | | | | Sales Tax | | $455.67 |
| | | | | Total | | $4,934.57 |

Total Savings :   $1,049.60

24.     Below is a screenshot of the order confirmation that Plaintiffs received reflecting the misleading sale offer advertised by Defendant on July 29, 2023 that induced Plaintiffs' purchase. Specifically, Defendant advertised that the prevailing or ordinary price for the i8 bed was $4,699 (the Reference Price) and was being offered for sale at $3,759.20. With this advertisement, Defendant falsely communicated to Plaintiffs that they were receiving a 20% discount ($939.80) from the ordinary or

1   prevailing price for Defendant's i8 bed.

**Order Number: 95016213393**                          **Order Date: July 29, 2023**

| Store Information | Billing Address |
|---|---|
| 10547 - CA - Palmdale - Antelope Valley Mall Store<br>Phone Number: (661) 272-0682<br>Sleep Professional: Steven F. | ATHENA LONICH<br><br>Email:<br>Mobile Number: |

**Home Delivery scheduled for: August 23, 2023**
We'll call or text you 1-2 days prior to confirm your 3-hour delivery timeframe.
If this date does not work for you, please visit the link below to reschedule.

CHANGE MY DATE

| Item Description | Delivery Details | Price |
|---|---|---|
| King I8 Sleep Number Smart Bed.<br>SKU: K2I8<br>QTY: 1 | Home Delivery<br>44040 BOGARD CT<br>LANCASTER, CA 93536-6271 | $4,800.00<br>$3,759.20 |
| King Integrated Base SCS<br>SKU: KFIB<br>QTY: 1 | Home Delivery<br>44040 BOGARD CT<br>LANCASTER, CA 93536-6271 | $549.00<br>$439.20 |
| Disposal Service<br>SKU: DISPOSAL<br>QTY: 1 | Home Delivery<br>44040 BOGARD CT<br>LANCASTER, CA 93536-6271 | $0.00 |
| Recycle fee for CA<br>SKU: REFEE_CA<br>QTY: 3 | UPS Ground<br>44040 BOGARD CT<br>LANCASTER, CA 93536-6271 | $31.50 |

Total Savings: $1,049.60

**Payment Methods**

| | |
|---|---|
| Subtotal: | $4,229.90 |
| Delivery Fee: | $249.00 |
| Tax: | $455.67 |
| Order Total: | $4,934.57 |

25.   In other words, Plaintiffs saw that the bed was supposedly on sale based on the advertised discounted offer and based on a markdown from a Reference Price. The Reference Price was displayed as a substantially higher price against which the sale price was compared. Further, Plaintiffs purchased a King Integrated Base advertised with a Reference Price of $549 with a purported sale price of $439.20.

26.   Plaintiffs thus purchased the bed and base from Defendant. Before doing so, Plaintiffs relied on the representation that the bed had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price. Plaintiffs relied on Defendant's representation that the bed they purchased was truly on sale and being sold at a substantial markdown and discount, and thereby fell victim to the deception intended by Defendant. Including shipping and sales tax, Plaintiffs paid $4,934.57 for

1    their order.

2    27.    The truth, however, is that the bed Plaintiffs purchased was not

3    substantially marked down or discounted, or at the very least, any discount they were

4    receiving had been grossly exaggerated. That is because the bed Plaintiffs bought had

5    not been offered for sale at Defendant's stores or on the Website (or anywhere else)

6    for any reasonably substantial period of time (if ever) at the full Reference Price. In

7    fact, for at least the 90-day period prior to Plaintiffs' purchase in July 2023 and for

8    over a year thereafter, Defendant had not offered the i8 bed at the Reference Price.

9    28.    Defendant manufactures and sells the Subject Beds and sets the prices

10    for the Subject Beds. Accordingly, Defendant knows at what prices the Subject Beds

11    sell and whether the Reference Prices are the prevailing prices for the Subject Beds.

12    29.    Defendant knows that the Reference Prices are fake and artificially

13    inflated and intentionally uses them in its deceptive pricing scheme at its stores and

14    on its Website to increase sales by misleading Plaintiffs and members of the putative

15    class to believe that they are buying products at a substantial discount. Defendant

16    thereby induces customers to buy products they never would have bought—or at the

17    very least, to pay more for merchandise than they otherwise would have – if

18    Defendant was simply being truthful about the prevailing price of its Subject Beds.

19    30.    Plaintiffs reasonably relied on the Reference Price in making their

20    purchase as a representation of the product's value and as a representation of the

21    discount they were receiving. This information was material to their decision to

22    purchase the bed and material to the price they were willing to pay for the bed.

23    31.    Therefore, Plaintiffs would not have purchased the bed, or at the very

24    least, would not have paid as much as they did, had Defendant been truthful.

25    Plaintiffs were persuaded to make this purchase because of the fake sale based on

26    Defendant's fake Reference Price.

27    32.    Plaintiffs would not have been willing to pay as much as they did for the

28    bed they purchased had they received complete and truthful information relating to

9

Defendant's Reference Price. Plaintiffs are entitled to restitution and damages at least in the form of the difference between the price they actually paid and the price a reasonable consumer would have paid absent the false Reference Price.

33.    Plaintiffs were further harmed because the price they paid for the bed was less than the value they received.

34.    Plaintiffs were further harmed because they did not receive the expected discount or benefit-of-the-bargain advertised by Defendant. Defendant advertised that Plaintiffs were receiving a 20% discount from Defendant's prevailing price for the i8 bed. In reality, Plaintiffs did not receive a 20% discount from Defendant's regular price for the i8 bed, because Defendant inflated the Reference Price against which the 20% discount was applied.

35.    As can be seen from the screenshot in paragraph 16 above, Defendant sold the King size i8 bed in 2023 for $3,289 (again using the false Reference Price of $4,699) – approximately $470 more than the purported bargain Plaintiffs received.

   c.  **Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendant's Influences Consumer Behavior and Affects Consumers' Perception of a Product's Value**

36.    The effectiveness of Defendant's deceitful pricing scheme is backed up by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992). Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id*. at 56. For this reason, the Ninth Circuit in *Hinojos* held that a

plaintiff making a claim of deceptive pricing, as Plaintiffs claim here, had standing to pursue claims against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

37.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

38.     In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value…Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

39.     Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

40.     The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy

Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id*.

41.    The clear inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Defendant is intended to, and does in fact, influence customer behavior—as it did Plaintiffs' purchasing decision here—by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

## V.    CLASS ACTION ALLEGATIONS

42.    Plaintiffs brings this action on behalf of themselves and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons in the State of California who purchased one or more Subject Beds during the Relevant Time at a stated discount from a higher reference price and who have not received a refund or credit for their purchase(s).

43.    The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judges who preside over this action, and any partner or employee of Class Counsel. Also excluded from the Class are any members who are

1    bound by mandatory arbitration and class waiver agreements.

2        44.    Plaintiffs reserve the right to expand, limit, modify, or amend the class

3    definitions stated above, including the addition of one or more subclasses, in

4    connection with their motion for class certification, or at any other time, based upon,

5    among other things, changing circumstances, or new facts obtained during discovery.

6        45.    **Numerosity.** The Class is so numerous that joinder of all members in

7    one action is impracticable. The exact number and identities of the members of the

8    Class is unknown to Plaintiffs at this time and can only be ascertained through

9    appropriate discovery, but on information and belief, Plaintiffs allege that there are

10    thousands of members of the Class.

11        46.    **Typicality.** Plaintiffs' claims are typical of those of other members of

12    the Class, all of whom have suffered similar harm due to Defendant's course of

13    conduct as described herein.

14        47.    **Adequacy of Representation.** Plaintiffs are an adequate representative

15    of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs

16    have retained attorneys who are experienced in the handling of complex litigation and

17    class actions, and Plaintiffs and their counsel intend to prosecute this action

18    vigorously.

19        48.    **Existence and Predominance of Common Questions of Law or Fact.**

20    Common questions of law and fact exist as to all members of the Class that

21    predominate over any questions affecting only individual members of the Class.

22    These common legal and factual questions, which do not vary among members of the

23    Class, and which may be determined without reference to the individual

24    circumstances of any member of the Class, include, but are not limited to, the

25    following:

26        (a)    Whether, during the Relevant Time, Defendant advertised false

27            Reference Prices with respect to the Subject Beds.

28

(b)    Whether, during the Relevant Time, Defendant advertised price discounts from false Reference Prices with respect to the Subject Beds.

(c)    Whether the Subject Beds during the Relevant Time were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

(d)    Does Defendant's deceptive pricing scheme using false Reference Prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.?

(e)    Does Defendant's deceptive pricing scheme using false Reference Prices constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq*.?

(f)    Does Defendant's deceptive pricing scheme using false Reference Prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, *et seq*.?

(g)    Does Defendant's deceptive pricing scheme using false Reference Prices constitute a violation of the California Legal Remedies Act California Civil Code §§1750, *et seq*.?

(h)    Whether Defendant's Reference Prices on the Subject Beds during the Relevant Time are false.

(i)    Whether and when Defendant knew or learned that Reference Prices for the Subject Beds were false.

(j)    What did Defendant hope to gain from using a false Reference Price scheme?

(k)    What did Defendant gain from its false Reference Price scheme?

(l)   Whether Defendant's use of false Reference Prices for the Subject Beds during the Relevant Time was material.

(m)   Whether Defendant had a duty to disclose to its customers that the Reference prices were fake "original" prices in furtherance of sham sales.

(n)   To what extent did Defendant's conduct cause, and continue to cause, harm to the Class?

(o)   Whether the members of the Class are entitled to damages and/or restitution.

(p)   What type of injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising?

(q)   Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

49.   **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiffs anticipate no

15

difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

50.    **Ascertainability.** Upon information and belief, Defendant keeps extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, and general marketing programs. On information and belief, Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200, *et seq*.)**

**(By Plaintiffs Against Defendant on Behalf of the Class)**

51.    Plaintiffs restate and re-allege the foregoing paragraphs as if fully set forth herein.

52.    California Business and Professions Code section 17200 *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

53.    A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other

laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

54.    Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

55.    The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendant, are deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

> (c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell

17

no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

56.     The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisement and representations use the words "regular," "original," or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

57.     Further, Defendant's conduct as described herein also violates California false advertising laws. Specifically, California Business & Professions Code section 17500 provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"

58.    California law also expressly prohibits false former pricing schemes like the one employed by Defendant. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

59.    Moreover, Defendant's conduct also violates the California Consumer Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code §§ 1750, et seq. More specifically, Defendant violated the CLRA provisions prohibiting businesses from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code §1770(a)(13).

60.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

61.    Here, Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in a misleading and deceptive pricing scheme by advertising and representing false Reference Prices and thereby falsely advertising and representing markdowns or "discounts" that were false and inflated. Defendant's deceptive marketing practice gave consumers the false impression that Defendant's products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression

that Defendant's products were worth more than they actually were. Defendant's acts and practices thus offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

62.     The harm to Plaintiffs and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

63.     A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

64.     Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. Among other things, Defendant affirmatively misrepresented the Reference Prices of its Subject Beds, which thereby misled and deceived customers into believing that they were buying the Subject Beds from Defendant at substantially marked down and discounted prices. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

65.     In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the Reference Prices advertised and published on its Website and displayed in its stores were not, in fact, prices at which the Subject Beds had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendant's Subject Beds rarely (if ever) were offered at the advertised Reference Prices. Defendant, however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

66.    Plaintiffs and each member of the Class suffered an injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and/or fraudulent business practices, and as a result of Defendant's unfair, deceptive, untrue or misleading advertising.

67.    Plaintiffs, on behalf of themselves and the members of the Class, seek restitution and disgorgement of all moneys received by Defendant through the conduct described above.

68.    Plaintiffs, on behalf of themselves and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including but not limited to, putting a stop to its deceptive advertisements and false Reference Prices in connection with its sale of beds.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §17500, *et seq.*

### (By Plaintiffs Against Defendant on Behalf of the Class)

69.    Plaintiffs restate the foregoing paragraphs as if fully set forth herein.

70.    The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

71.    Similarly, another section of the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the

alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

72.   Here, Defendant routinely disseminated in its stores and on its Website false Reference Prices for the Subject Beds, including to Plaintiffs. Such statements of Defendant were untrue, or at the very least, were misleading. Among other things, Defendant rarely, if ever, offered the Subject Beds for sale at the Reference Prices displayed for each product. Further, Defendant rarely, if ever, offered the Subject Beds at the Reference Prices within the three months immediately preceding the publication of the Reference Prices.

73.   Defendant thus misled customers, including Plaintiffs, into believing that the Reference Prices are or were genuine original, retail, or former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

74.   Defendant engaged in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase the sale of the Subject Beds.

75.   Defendant knew, or by the exercise of reasonable care should have known, that its dissemination of Reference Prices for the Subject Beds was untrue and/or misleading. Among other things, Defendant represented the Reference Prices in connection with the Subject Beds even though it knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the crossed-out Reference Prices.

76.     As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiffs and members of the Class have suffered injury in fact and have lost money. As such, Plaintiffs requests that this Court order Defendant to restore this money to Plaintiffs and all members of the Class, and to enjoin Defendant from continuing its false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiffs, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §1750, *et seq*.

### (By Plaintiffs Against Defendant on Behalf of the Class)

77.     Plaintiffs restate and re-allege the foregoing paragraphs as if fully set forth herein.

78.     The Consumer Legal Remedies Act of 1970, Cal. Civ. Code sections 1750 *et seq*. (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code §1760.

79.     Plaintiffs and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of its Subject Beds to Plaintiffs and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code section 1761(a).

80.     Defendant violated and continue to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of Defendant's branded products: "Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Cal. Civ. Code §1770(a)(13).

81.     Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed—or at the very least, any amounts of price reductions were exaggerated—in that Defendant's merchandise was rarely, if ever, previously offered for sale and/or sold at the higher Reference Prices for a reasonably substantial period of time, (b) there is no other channel through which the products have previously been offered for sale and/or sold at the false Reference Price for a reasonably substantial period of time, and (c) the Reference Prices Defendant advertises in connection with its Subject Beds were never sold elsewhere for any other prices besides the falsely discounted sale prices at which customers bought items from Defendant.

82.     On January 16, 2025, Plaintiffs provided notice to Defendant pursuant to California Civil Code §1782(a) of their claims. Defendant has not responded.

83.     Plaintiffs seek damages and an injunction for Defendant's violation of the CLRA to enjoin Defendant's methods, acts, and practices of deceiving customers through its false and misleading pricing scheme outlined above.

## FOURTH CLAIM FOR RELIEF

### FRAUD (INTENTIONAL MISREPRESENTATIONS)

### (By Plaintiffs Against Defendant on Behalf of the Class)

84.     Plaintiffs restate and re-allege the foregoing paragraphs as if fully set forth herein.

85.     Defendant consistently represented to all members of the Class during the Relevant Time that the Subject Beds were being offered at a discount from a Reference Price. Defendant made this representation by displaying on the product description page for each of these products a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount or dollar amount.

86.     Defendant's Reference Price representations are false. Among other things, Defendant's representations conveyed false information about the items Plaintiffs and the Class purchased, namely that the items they purchased had sold in the recent past for a reasonably substantial period of time at the higher Reference Price displayed on Defendant's Website and/or in the prevailing market. The truth is that Defendant rarely, if ever, previously offered for sale and/or sold those products at the higher Reference Price for any reasonably substantial period of time. Moreover, the Reference Prices Defendant represented in connection with its products necessarily cannot be prevailing market prices because Defendant sells its branded products directly to consumers only at the prices advertised on its Website and in its stores and thus, the items were never sold elsewhere for any other price besides the falsely discounted sale price at which customers bought items from Defendant.

87.     Defendant knew that its representations were false when it made them, or at the very least, it made the representations recklessly and without regard for their truth. In other words, Defendant knew that the Subject Beds Plaintiffs and the Class purchased had rarely, if ever, sold at the substantially higher Reference Price displayed on Defendant's Website and in Defendant's stores in the recent past and/or in the prevailing market.

88.     Defendant's representations were made with the intent that Plaintiffs and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased,

and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

89.    Defendant engaged in this fraud to the Plaintiffs and the Class's detriment in order to increase Defendant's own sales and profits.

90.    Plaintiffs and the Class reasonably relied on Defendant's representations.

91.    Absent Defendant's misrepresentations, Plaintiffs and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs' and the Class's reliance was a substantial factor in causing them harm.

92.    As a direct and proximate result of the above, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

93.    Defendant undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiffs and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiffs and the Class. Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiffs and the Class, and also because Defendant's deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiffs and the Class. Based on the allegations above, Defendant's actions constituted oppression because Defendant's deceptive conduct was despicable and subjected Plaintiffs and the Class to cruel and unjust hardship in knowing disregard of their rights.

# FIFTH CLAIM FOR RELIEF

## FRAUDULENT CONCEALMENT

### (By Plaintiffs Against Defendant on Behalf of the Class)

94.    Plaintiffs restate and re-allege the foregoing paragraphs as if fully set forth herein.

95.    Defendant uniformly disclosed incomplete facts to Plaintiffs and all members of the Class during the Class Period in connection with the Subject Beds. Namely, Defendant disclosed a Reference Price for the Subject Beds by displaying on the product description page for each item, as well as the on the thumbnail displays of each product when presented as a list, a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount or dollar amount.

96.    Defendant, however, intentionally failed to disclose other facts, making Defendant's disclosure deceptive. Specifically, Defendant failed to disclose that Defendant rarely, if ever, previously offered for sale and/or sold the Subject Beds at the higher Reference Price for any reasonably substantial period of time. As a result, Defendant deceived Plaintiffs and the Class into believing that they were purchasing items at a substantial markdown or discount when, in reality, the false Reference Price and discounting practice artificially inflated the true market value of the items they purchased.

97.    As a separate basis for concealment, Defendant uniformly and intentionally concealed from Plaintiffs and all members of the Class that the items they purchased from Defendant had rarely, if ever, been sold by Defendant in the recent past at the substantially higher Reference Price displayed on Defendant's Website, stores and/or in the prevailing market. These were facts known only to Defendant that Plaintiffs and the Class could not have discovered.

98.    Plaintiffs and the Class did not know of the concealed facts.

99.    Defendant intended to deceive Plaintiffs and the Class by concealing the facts described above.

100.    Had the omitted information been disclosed, Plaintiffs reasonably would have behaved differently. Among other things, Plaintiffs would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did.

101.    The omitted information was material and thus, reliance is presumed on a classwide basis. The omitted information related to the price of the items sold and whether Plaintiffs were receiving a true and genuine substantial discount or whether, instead, Plaintiffs was being deceived into buying products through a pricing scheme utilizing fake, artificially inflated original, retail, or former prices, was material. A reasonable person would plainly attach importance to matters affecting pricing in determining his or her purchasing decision.

102.    As a direct and proximate result of the above, Plaintiffs and the Class have been harmed and suffered damages in an amount to be proven at trial.

103.    Defendant undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiffs and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiffs and the Class. Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiffs and the Class, and also because Defendant's deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiffs and the Class. Based on the allegations above, Defendant's actions constituted oppression because Defendant's deceptive conduct was despicable and subjected Plaintiffs and the Class to cruel and unjust hardship in knowing disregard of their rights.

## VII.  PRAYER FOR RELIEF

104.    WHEREFORE, Plaintiffs pray for judgment against Defendant, and each of them, as follow:

<u>**ON THE FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§17200 *et seq*.)**</u>

A.    For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiffs be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and pricing practices.

C.    For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of its unfair, deceptive, untrue, and misleading advertising, all as described above.

D.    For an award of equitable and declaratory relief.

E.    For pre and post judgment interest and costs of suit incurred herein.

F.    For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

G.    For such other and further relief as the Court may deem just and proper.

<u>**ON THE SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 *et seq.***</u>

H.    For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiffs be designated the class representative, and that undersigned counsel be designated as class counsel.

I.     For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and pricing practices.

J.     For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of its unfair, deceptive, untrue, and misleading advertising, all as described above.

K.     For an award of equitable and declaratory relief.

L.     For pre and post judgment interest and costs of suit incurred herein.

M.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

N.     For such other and further relief as the Court may deem just and proper.

## ON THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*)

O.     For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiffs be designated the class representative, and that undersigned counsel be designated as class counsel.

P.     For compensatory damages in an amount to be proven at trial.

Q.     For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and pricing practices.

R.     For an award of equitable and declaratory relief.

S.     For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

T.     For such other and further relief as the Court may deem just and proper.

## ON THE FOURTH CLAIM FOR RELIEF FOR FRAUD (AFFIRMATIVE MISREPRESENTATIONS)

U.     For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiffs be designated the class representative, and that undersigned counsel be designated as class counsel.

V.     For compensatory damages in an amount to be proven at trial.

W.     For punitive damages in an amount sufficient to punish Defendant and to deter it from engaging in wrongful conduct in the future.

X.     For pre and post judgment interest and costs of suit incurred herein.

Y.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

Z.     For such other and further relief as the Court may deem just and proper.

## ON THE FIFTH CLAIM FOR RELIEF FOR FRAUDULENT CONCEALMENT

AA.   For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiffs be designated the class representative, and that undersigned counsel be designated as class counsel.

BB.   For compensatory damages in an amount to be proven at trial.

CC.   For punitive damages in an amount sufficient to punish Defendant and to deter it from engaging in wrongful conduct in the future.

DD.   For pre and post judgment interest and costs of suit incurred herein.

EE.   For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

FF.   For such other and further relief as the Court may deem just and proper.

Dated: February 18, 2025                    CARTER ARNETT PLLC


                                            By: /s/ Omer Salik
                                                Omer Salik
                                            Attorneys for Plaintiffs
                                            Gerardo Prieto and Athena Lonich

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all triable issues.


Dated:  February 18, 2025                   CARTER ARNETT PLLC


                                            By:  /s/ Omer Salik
                                                 Omer Salik

                                            Attorneys for Plaintiffs
                                            Gerardo Prieto and Athena Lonich

FIRST AMENDED CLASS ACTION COMPLAINT – CASE NO. 2:25-CV-00352-RGK-MAA